1   PATRICIA BARBOSA (SBN 125685)
2   PBarbosa@barbosagrp.com
    DANIELLA LITVAK (SBN 293927)
3   Dlitvak@barbosagrp.com
4   **BARBOSA GROUP**
    16531 Bolsa Chica St., Suite 205
5   Huntington Beach, CA 92649
6   Tel: (714) 465-9486
    Facsimilie: (866) 907-3235
7
8   Attorney for Plaintiff,
    CHRISTIE RUDDER
9
                **UNITED STATES DISTRICT COURT**
10
                **CENTRAL DISTRICT OF CALIFORNIA**
11

12  CHRISTIE RUDDER,                    ) Case No.: EDCV 14-00277-JGB (SPx)
                                        ) **Civil Rights**
13              Plaintiff,              )
                                        )
14  vs.                                 ) **MEMORANDUM OF POINTS AND**
                                        ) **AUTHORITIES IN SUPPORT OF**
15                                      ) **PLAINTIFF CHRISTIE RUDDER'S**
16  HAMPTON INN – NORCO THE dba         ) **MOTION FOR PARTIAL**
    of MPJ DESAI, INC., and DOES 1      ) **SUMMARY JUDGMENT**
17  through 10, Inclusive,              )
                                        ) [Filed concurrently with Plaintiff's Notice
18              Defendants.             ) of Motion and Motion for Partial
19                                      ) Summary Judgment; Statement of
                                        ) Undisputed Facts; Declarations of
20                                      ) Christie Rudder, Patricia Barbosa, Jeff
                                        ) Mastin and Kimberly Dean; and
21                                      ) [Proposed] Order on Plaintiff's Motion
22                                      ) for Partial Summary Judgment]
                                        )
23                                      ) Hearing Date: April 13, 2015
24                                      ) Time: 9:00 a.m.
25                                      ) Location: United States District Court
                                        )          Courtroom 1, 2nd Floor
26                                      )          3470 Twelfth Street
27                                      )          Riverside, CA  92501-3801
28

1

## **<u>TABLE OF CONTENTS</u>**

2

3    I.      INTRODUCTION ................................................................1

4    II.      STATEMENT OF FACTS..................................................4

5    III.     LEGAL STANDARD FOR A MOTION FOR SUMMARY

6            JUDGMENT............................................................11

7    IV.    THE COURT HAS JURISDICTION OVER THE PARTIES ...............13

8      A. Elements Plaintiff must prove to succeed in her ADA claims...............13

9      B. Plaintiff is a Qualified Person with a Disability................................13

10      C. Defendant MPJ Desai, Inc., constructed, owns and operates the Inn.........15

11    V.      DEFENDANT DENIED PLAINTIFF FULL AND EQUAL ACCESS TO

12            THEIR PUBLIC FACILITIES IN VIOLATION OF CIV. CODE §§ 51

13            AS A MATTER OF LAW .....................................................16

14      A. Regulatory System For Public Accommodations In California Law.......17

15      B. Regulatory analysis under Title III of the ADA................................17

16    VI.    DEFENDANT CONSTRUCTED THE INN IN 2008 IN VIOLATION OF

17            ADA AND CALIFORNIA ACCESSIBILITY STANDARDS.................19

18      A. Violation of ADAAG and Title 24-2 Building Standards.....................19

19      B. Table.......................................................................20

20      C. Defendant intentionally violated the approved plans filed with the City of

21        Norco, and applicable accessibility......................................23

22   VII.    CONCLUSION ...........................................................24

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3 **FEDERAL CASES**

4 *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555(1999)……………………………14

5 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....................................12

6 *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175

7     (9th Cir. 2010)..…………………………………………………………………….2

8 *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.,* 603 F.3d

9     666 (9th Cir. 2010)………………………………………………………….13

10 *Arnold v. United Artists Theater Circuit, Inc.*, 866 F.Supp. 433 (N.D.Cal

11     1994)……………………………………………………………………..13

12 *Botosan v. McNally Realty*, 216 F.3d 827, 833 (9th Cir. 2000) ........................16

13 *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)....................................................12

14 Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939 (9th Cir. 2011)......2, 12, 13

15 Fraser v. Goodale, 342 F.3d 1032 (9th Cir. 2003)………………………1, 14, 15

16 *Head v. Glacier Nw. Inc.,* 413 F.3d 1053 (9th Cir. 2005)………..……………..15

17 *Long v. Coast Resorts Inc.,* 267 F.3d 918 (9th Cir. 2011)…………………11, 18

18 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 105

19     S.Ct. 1348 (1986).........................................................................................12

20 *Miller v. Cal Speedway Corp.,* 536 F.3d 1020 (9th Cir. 2008)…………………18

21 *Moeller v. Taco Bell Corp.,* 2007 WL 2301778 (N.D.Cal Aug. 8, 2007)….11, 20

22 *Molski v. M.J. Cable, Inc.,* 481 F.3d 724 (9th Cir. 2007)………………..……18

23 *Munson v. Del Taco, Inc.,* 46 Cal. 4th 661, 665 (2009)………………………..23

24 *Pascuiti v. N.Y. Yankees*, 87 F.Supp.2d 221 (S.D.N.Y. 1999)……………….....18

25 *United States v. AMC Entm't Inc.,* 245 F.Supp.2d 1094 (C.D.Cal 2003)……...12

26 *Wang Laboratories, Inc. v. Mitsubishi Electronics American Inc.*, 860

27     F.Supp. 1448 (C.D.Cal. 1993)………………………..……………………..11

28

# TABLE OF AUTHORITIES

## (CONTINUED)

**STATE CASES**

*Donald v. Café Royale Inc.*, 218 Cal. App. 3d 168 (1990) ..............13, 16, 17, 23

*Donald v. Sacramento Valley Bank*, 209 Cal.App.3d 1183 (1989)....................15

FEDERAL Statutes

42 U.S.C. § 12102(2)(4)(A)(B) & (C)........................................................1, 14

42 U.S.C. § 12181(7)(A) & (B).........................................................................16

42 U.S.C. § 12181(b)(1) ...................................................................................3

42 U.S.C. § 12182...............................................................................2, 15, 17

42 U.S.C. § 12183(a)(1) ..................................................................................17

42 U.S.C. § 12183(a)(2) ...................................................................................3

42 U.S.C. § 12188..........................................................................................15

**STATE STATUTES**

Cal. Civ. Code § 51....................................................................3, 13, 15, 16

Cal. Gov. Code § 4450 ...................................................................................16

Cal. Health & Saf. Code § § 19955 et seq.........................................3, 15, 17, 20

Cal. Health & Saf. Code § § 19957……………………………………………….16

**FEDERAL RULES**

Fed. R. Civ.P. 56.......................................................................................11, 12

**FEDERAL REGULATIONS**

28 C.F.R. § 36.104........................................................................................13, 15

28 C.F.R.§ 36.406(a) ......................................................................................18

**STATE REGULATIONS**

Cal. Code of Regulations, Title 24.3112A .........................................................16

## I.   INTRODUCTION

Plaintiff CHRISTIE RUDDER  ("Plaintiff") files this Motion for Partial Summary Judgment as to liability against Defendant MPJ DESAI, INC., the owner and operator of the Hampton Inn-Norco ("the "Inn ") to request an order finding that Defendant MPJ Desai Inc. ("Defendant"), has violated Title III of the Americans with Disabilities Act of 1990 (the "ADA") and California civil rights laws by discriminating against Plaintiff on the basis of her disability when she stayed at the Inn on September 27-29, 2013, while attending a bowling tournament.  This motion is based on the undisputed evidence that Defendant constructed the Inn in *2008*, 15 years after the effective date of Title III of the ADA, in violation of ADA standards and California Building Codes; and contrary to the building plans approved by the City of Norco.

Plaintiff is a qualified individual with a disability as the result of the effects of progressive diabetes, several strokes, and car accidents that have left her an incomplete quadriplegic with limited mobility, stamina and strength. Plaintiff is a full time wheelchair user with very limited ability to stand or walk, and requires the use of facilities that comply with accessibility standards for support or assistance.  Plaintiff is also long-time disabled advocate who has spent most of her adult life working to eliminate discrimination against persons with physical disability.  She has also attempted to live her life in a manner that allows able-bodied persons see that disabled persons can live full lives.  Plaintiff has worked with non-profit groups to establish emergency plans, accessible homeless shelters, and accessible transportation.[1]

---

[1] Declaration of Christie Rudder, ¶ 4, ("Rudder Dec."), See, 42 U.S.C. § 12102(2) and, "Diabetes is a physical impairment under the ADA because it is a physical condition affecting the digestive, hemic, and endocrine systems." *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003)

Plaintiff has also determined to make the goals of the ADA a reality, by enforcing the ADA in federal court when necessary to eliminate discrimination. Plaintiff has filed meritorious complaints that have resulted in far-reaching and significant removal of barriers and changes to discriminatory policies that has demonstrated the power of enforcing the ADA.[2]  For enforcing her rights, Defendant has called her a "fraud," and claimed that she runs a "business" suing for meritless claims.  This is not only untrue, but a ploy frequently used by defendants to attack the plaintiff instead of dealing with the merits of the case. The Ninth Circuit has stated that an ADA's credibility cannot be in question because of past litigation.[3]

Plaintiff seeks to live her life fully and model independence as part of mainstream society without being deterred or excluded by unlawful access barriers in public facilities.  Plaintiff, a championship bowler, travelled to the City of Norco to attend a bowling tournament representing her bowling league in September 2013.[4]  She endured many physical barriers and suffered significant injury due to the multiple violations of the accessibility standards implemented to eliminate discrimination against disabled persons.[5]

Defendant, **MPJ DESAI, INC.**, constructed the Inn in 2008, and operates the Inn.  Pursuant to Title III of the American's with Disabilities Act ("ADA"), owners and operators of a public accommodation are prohibited from discriminating against persons with disabilities, "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."[6]

---

[2] SSUF 5:
[3] *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010)

[4] SSUF 6, 7:
[5] SSUF: 14 – 25
[6] 42 U.S.C. §12182 (a); See, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th

Plaintiff files this Motion to prove that Defendant violated her civil rights under Title III of the "ADA", Cal. Civ. Code §§ 51 et seq., Cal. Health & Saf. Code §§ 19955 et seq. and Cal. Code Reg., Tit. 24-2—*as an undeniable matter of law*—by constructing and operating the Inn in violation of accessibility standards required for public accommodations, such as the Inn.  Plaintiff moves for a finding of liability and partial summary judgment on the following issues:

(**1**) Plaintiff is a qualified individual with a physical disability protected by Title III of the ADA and Cal. Civ. Code § 51;

(**2**) Defendant has been and is the owner and operator the Inn, which is a "place of public accommodation" as defined by Title III of the ADA, Cal. Civ. Code § 51, and Cal. Health & Saf. Code §§ 19955 et seq.;

(**3**) Defendant built the Inn for first occupancy in 2008, without complying with accessibility standards required under ADAAG and California building codes, in violation of Title III of the ADA, Cal. Civ. Code §51 et seq., and Cal. Health & Saf. Code §§ 19955 et seq.; and,

(**4**) Defendant discriminated against Plaintiff because of her disability by denying her "full and equal enjoyment," and "full and equal" access to the Inn's public facilities, as a matter of law, during her stay at the Inn in September 2013.

Without the Court's clear, strong and consistent enforcement of the ADA and California civil rights laws, we cannot fulfill our national goal of eliminating historical and pervasive discrimination against disabled persons in places of public accommodation.[7]  Plaintiff wishes to return to the Inn, but is and continues to be deterred from returning to the Inn until such time as Defendants make the Inn "readily accessible to and useable by disabled persons."[8]

---

Cir. 2011), defining "discrimination" as a violation of applicable accessibility standards.
[7] 42 U.S.C. § 12181(b)(1).
[8] 42 U.S.C. § 12183(a)(2).

## II.   STATEMENT OF FACTS

On September 27, 2013, Plaintiff traveled to the City of Norco to attend and participate in a bowling tournament.[9]  Plaintiff was an avid, and championship bowler before her accident at the Inn, and had been involved with bowling leagues for years.[10]  Due to Plaintiff's experience in travelling, as a full-time wheelchair user, she knows she must carefully makes reservations to reserve a guestroom designated as wheelchair accessible when she travels.[11]  Plaintiff made reservations at the Inn for a wheelchair accessible room, and was assigned guestroom, 127.[12]  Plaintiff made sure that she also called and verified that her assigned room was wheelchair accessible.

When Plaintiff arrived at the Inn she found significant access barriers that affected her ability to use the facilities in a safe and independent manner. Plaintiff drives a modified truck that she controls with hand held controls, and which is equipped with a lift to assist her to enter and exit the truck.[13]  At the time of Plaintiff's visit, the Inn parking lot had 85 parking spaces, and had only three (3) designated accessible parking spaces, although four (4) were required.[14]

Plaintiff found that the designated accessible parking spaces were not located on a level space (no more than 2% slope in any directions), making it more difficult for Plaintiff to reach the Lobby entrance.  The pedestrian path of travel from the parking spaces to the Inn's entrance had excessive slopes, requiring Plaintiff to travel backwards to reach the Lobby,[15] Plaintiff parked in a designated accessible parking spot and wheeled in her chair with difficulty to the

---

[9] Plaintiff's Separate Statement of Undisputed Facts and Contentions of Law ("SSUF") Number 7
[10] SSUF 6
[11] SSUF 8
[12] SSUF 9
[13] SSUF  11
[14] SSUF 12
[15] SSUF 13 - 14

Lobby entrance.[16]  Plaintiff's expert found that the designated parking spaces had excessive slopes of up to 7% in the area for the parking spaces, and that the path of travel went up to 5%. where the codes.  However, the plans approved by the City of Norco for the site grading shows the slopes with no more than 2% slope in any direction for the parking lot and the path to the Lobby entrance.[17] Required signage for the parking lot and accessible spaces was also missing.[18] The lack of accessible parking spaces and path of travel caused Plaintiff difficulty, and at one point forced her to travel backwards to reach the Lobby.[19]

Upon entering the Inn, Plaintiff found that the registration counter was not accessible to her, because the counter did not have a lowered portion where she could register while in her wheelchair.[20]  The lack of a lowered counter forced Christie to raise her head to register, a painful motion due to her disability, because the clerk did not come around the counter to check her in. She felt embarrassed, conspicuous, frustrated and unwelcome due to the barriers she had already faced.[21]  Accessible transaction counters are required under the Americans with Disabilities Accessibility Guidelines ("ADAAG") and California building codes for new construction. The registration counter in the plans approved by the City also shows that Defendant submitted plans for a registration counter with a compliant lowered counter, but did not install an accessible counter.[22]

The Inn also offers guests a small market with food and sundry items. Plaintiff decided to buy food before going to bed.  The market food items were

---

[16] SSUF 13 – 14
[17] SSUF 14
[18] SSUF 16
[19] SSUF 14
[20] SSUF 17
[21] SSUF 19
[22] SSUF: 17

1   not within reach range for Christie, and she had to ask for help from the desk

2   clerk.  The clerk was busy and was required to take care of guests at the same

3   time.  She was frustrated that the market was designed to ensure she could not

4   reach the items and could not transact business without asking the clerk to leave

5   the desk to assist her.[23]

6          Plaintiff found that the designated accessible guestroom (127) to which

7   she was assigned the first night, also had significant barriers that prevented her

8   from fully and safely using the guestroom.  Plaintiff was tired and would have

9   showered, but she found that the shower/tub combination did not have a transfer

10  bench, and that the controls and grab bars did not appear to be in the correct

11  location for her to use.  Rather than ask for a transfer shower bench, which

12  Plaintiff must use to transfer into shower or tub, decided not to risk showering

13  that night, and went to bed. [24]   Plaintiff's expert inspected room 127 and found

14  multiple violations of accessibility standards that would hinder or exclude full

15  use of the facilities by persons in wheelchairs.  The Table of Barriers, *infra*,

16  details the barriers and the violations.

17         On the morning of September 28, 2013, Plaintiff went to the breakfast area

18  to eat from the complimentary breakfast/dining area offered to guests.  She found

19  that most of the self-serve foods and condiments were out of her reach in her

20  wheel chair.  Plaintiff could not serve herself, and had to ask others to assist her

21  in getting her breakfast. All of the tables in the dining area were also

22  inaccessible, as they were pedestal tables that did not allow her to wheel under

23  the table to approach the table. As with other barriers she encountered, it was

24  difficult to use the facilities, and she was frustrated that she had to wait and

25  depend on others to help her use the facilities.[25]

26  ────────────

[23] SSUF 21

27  [24] SSUF 23 – 29

[25] SSUF 30 – 33

28

1  At the time of the first noticed inspection in July 2014, Plaintiff's expert
2  found that new signs offering assistance for disabled persons had been placed
3  around the breakfast area, that had not been there during Plaintiff's visit in
4  September 2013 or the expert's first, informal inspection in December 2013.[26]
5  Plaintiff checked out of the Inn, and went to compete in the bowling tournament
6  located down the street.[27]

7  Sometime later in the day, Plaintiff realized that she would need to spend
8  another night in Norco as she had moved up in the tournament rankings.[28]
9  Although Plaintiff knew that the Inn had barriers, she was not willing to risk
10  finding another hotel in the City that might be worse, and sought to book room
11  127 for another night.  Plaintiff called and found that room 127 was no longer
12  available, but the desk clerk told her that they had another accessible room that
13  was "exactly" like room 127.  The clerk reserved Plaintiff room 312 for the night
14  of September 28, 2013.[29]

15  Following the bowling tournament, Plaintiff checked into designated
16  accessible guestroom, 312.  She was tired and wanted to shower and rest up for
17  the next day's bowling tournament.  She found that room 312, was not "exactly
18  the same" as room 127, but significantly more inaccessible.  Room 312 had a
19  lavatory that did not allow her to wheel under the sink because it had a drawer
20  across the width at approximately 10" from the floor.  More importantly, the
21  shower/tub configuration in room 312 did not have a removable shower head,
22  meaning that Plaintiff could not shower unless she stood up under the shower
23  stream; something she cannot do. The tub had only one vertical grab bar against
24  the far wall that would *not* provide the support for Plaintiff to safely enter and

25

26  [26] SSUF 31
   [27] SSUF 35
27  [28] SSUF 37
   [29] SSUF 37

28

1    exit the tub. Plaintiff cannot stand up in a tub and shower, and requires a transfer

2    style tub bench to use a tub, and a removable shower head to shower.[30]  The

3    Table of Barriers, *infra,* lists the barriers and the violations found in room 312.

4        Plaintiff called the clerk to see if someone could install a hand held

5    showerhead, as she could not stand to use a fixed showerhead. The clerk did not

6    understand the use of a hand held showerhead, and told her to unscrew the

7    showerhead.  Even if Christie could stand up and unscrew the showerhead, this

8    would not turn a fixed showerhead into an accessible handheld showerhead when

9    unscrewed from the wall.  Plaintiff wanted to shower and decided that she would

10   use the ice bucket from her room to pour water over herself to take a shower,

11   since she could not stand up under the fixed showerhead.  Plaintiff also she still

12   needed a transfer tub bench so she could enter and exit the tub.  Plaintiff called

13   clerk, Michelle Bateman who told her that the Inn had a portable shower bench

14   to transfer from her wheelchair into the tub.[31]

15       Ms. Bateman brought a tub bench to the room, and with difficulty installed

16   it onto Plaintiff's tub.  Ms. Bateman seemed unsure of how to install the tub

17   bench, and told Plaintiff she had not installed one before for a guest.[32]  Plaintiff

18   had also never seen this type of bench prior to her stay at the Inn, and felt uneasy

19   about using the tub bench.  The tub bench had only two thin legs that fit into the

20   tub, with two rubber clamps held onto the side of the tub.  A "push pin" under

21   the legs secured the legs in an open position.  Plaintiff was uneasy about using

22   the tub bench, but Ms. Bateman told her she could not take a shower without

23   using the tub bench.[33]  Plaintiff was tired, and embarrassed about asking more

24   questions, and did not believe that Ms. Bateman had knowledge of disability

25   _____

26   [30] SSUF 40
     [31] SSUF 40 - 48
27   [32] SSUF 44
     [33] SSUF 45
28

concerns to help her seek another option.  Plaintiff tried to help Ms. Bateman. For example, Ms. Bateman installed the bench near the rear of the tub, but found that the legs would not flat inside the narrow tub.  Plaintiff advised her to relocate the bench toward the center of the tub, which was a little wider, so that the two legs of the bench would lay flat on the bottom of the tub.[34]  Ms. Bateman did not ask Plaintiff to install the bench, and even if she had, Plaintiff could not have installed or removed the bench due to her physical disabilities, and the inaccessibility of the tub bench.[35]  Ms. Bateman did not ask her weight or any other questions to determine if Plaintiff could safely use the bench.[36]

Ms. Bateman finished installing the tub, and left the room.  Plaintiff undressed and used the tub bench to transfer into the tub.  Plaintiff was uneasy, but decided to shower, using the ice bucket to get water.  When Plaintiff reached forward to use the ice bucket, the tub bench collapsed, with the legs bent inward and the rubber on the clamps dislodging and detaching the bench from the side of the tub.  Plaintiff was thrown into the tub hitting the side of the tub hitting her head, shoulders, hip, knee and foot.  Plaintiff lay trapped between the dislodged tub and the side of the tub.  With only one grab bar incorrectly located, and not within her reach, Plaintiff struggled to get out of the tub, in pain, naked, and not sure how to transfer back into her wheelchair.[37]

For tub benches to comply with ADAAG standards, the removable tub seats must be "capable of secure placement."[38]  During discovery and the inspection of the experts, Plaintiff discovered that the shower/tub and the tub bench in the plans approved by the City of Norco were designed to be compliant,

---

[34] SSUF 48

[35] SSUF 49
[36] SSUF 50
[37] SSUF 51 - 56
[38] SSUF  1.

but the tub and bench installed by Defendant were not accessible.  The shower/tub in the approved plans had compliant grab bars, not the single, misplaced grab bar in room 312.  The tub approved in the plans, was a standard size tub (32" wide), while the installed tub was only 29" wide and only 24" wide on the interior floor of the tub.[39]  The tub bench used by Plaintiff had to be placed in the center of the tub, in order for the legs to lay flat, and did not lay completely flat.[40]

The tub bench used by Defendant is a WingIts model tub bench that according to the testimony of manager Ronak Desai was defective.  Mr. Desai testified that he sent WingIts representatives emails stating that the security push-pin holding the legs in place fell out during use, and that the glue for the rubber clamps dislodged when used by guests.[41]  Mr. Ronak provided photos of the tub bench used by Plaintiff to show that the rubber clamps had dislodged. [42]  Additionally, in emails between Mr. Desai and the vendor's representative, Billy Mac, Mr. Mac states that he was "glad we were able to determine the tubs don't fit your tubs properly."[43]  Although WingIts replaced the push pin security lock with one that requires twisting, the problem of using seats in tubs too narrow for secure fitting has never been explained.

Plaintiff fell and severely injured herself as the direct result of the barriers and failure to provide accessible tub and bench.  The lack of accessible grab bars, handheld shower or accessible controls caused Plaintiff more difficulty as she could not support herself or use the grab bars to get out of the tub.[44]  Plaintiff

---

[39] SSUF 60
[40] SSUF 60
[41] SSUF 61
[42] SSUF 61
[43] SSUF 62
[44] SSUF 55

called Michelle who came and picked up the tub bench and discussed Plaintiff's fall and injuries.[45]

Plaintiff has been under medical care for her injuries caused by the fall, has experienced significant pain, has had to endure medical procedures, and has significantly reduced her progress in her ability to walk or stand for more than a few minutes (assisted).  Plaintiff continues to receive medical care, and up to the present, her medical expenses have been over $75.000.[46]

Since the filing of the Complaint Defendant has made some minor changes to the Inn's facilities in an attempt to avoid liability.  However, the alterations are also non-compliant and do not excuse a finding of discrimination against Defendant for the barriers and injuries she endured on September 27-29 during her visit to the Inn.[47]

## III.   LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Federal Rules of Civil Procedures permits a party to file a motion to request a full or partial summary judgment of claims or defenses raised.[48]  "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."[49] A number of courts, including the Ninth Circuit have grant partial summary judgments where a plaintiff has demonstrated violations of accessibility standards applicable under the ADA.[50]  A motion for a summary judgment

---

[45] SSUF 58
[46] SSUF 65
[47] SSUF 66
[48] Fed.R.Civ.P. Rule 56(a), (b), (d); *Wang Laboratories Inc., v. Mitsubishi Electronics American Inc.*, 860 F.Supp. 1448, 1450 (C.D. Cal. 1993).
[49] *Id.* Rule 56(c); and 56(d); permitting the Court, to issue an order "specifying the facts that appear without substantial controversy" when not rendering judgment upon the whole case.
[50] *See, e.g., Long v. Coast Resorts. Inc.*, 267 F.3d 918, 921-24, 926 (9th Cir. 2001); *Moeller v.*

1   should be granted, "if the pleadings, depositions, answers to interrogatories, and

2   admissions on file, together with the affidavits" show that there is no genuine

3   issue of material fact, and that the moving party is entitled to judgment as a

4   matter of law.[51]  There is no genuine issue of material fact to alter liability as a

5   matter of law for the multitude of accessibility violations constructed by

6   Defendant.

7          Although Plaintiff party bears the initial burden of demonstrating the lack

8   of material facts, and identifying the evidence that establishes the absence of a

9   triable issue of material fact, once Plaintiff meets her initial burden, the burden

10  shifts to Defendant.[52]  In order to discharge its burden, the non-moving party

11  "must set forth specific facts showing that there is a genuine issue for trial," and

12  that the facts in dispute between the parties "might affect the outcome of the suit

13  under the governing law."[53] "Factual disputes that are irrelevant or unnecessary

14  will not be counted." [54] The nonmoving party must present more than the "mere

15  scintilla of evidence."[55] "Where the record, taken as a whole, could not lead a

16  rational trier of fact to find for the non-moving party, there is no genuine issue

17  for trial."[56]  Plaintiff can prove discrimination, and liability based on her

18  disability, if she proves "there is a violation of applicable accessibility

19  standards."[57]  The evidence is unassailable that Defendant constructed the Inn in

20

21

*Taco Bell Corp.*, 2007 WL 2301778 (N.D. Cal. Aug. 8, 2007); *United States v. AMC Entm't, Inc.*, 245 F. Supp. 2d 1094, 1101 (C.D. Cal. 2003).

22   [51] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

23   [52] Fed.R.Civ.P. Rule 56(e); *Celotex, supra*, 477 U.S. at 323;
     *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986).

24   [53] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-248 (1986); Fed.R.Civ.P. Rule 56(e).
     [54] *Id.*

25   [55] *Id*. at 252.

26   [56] *Matsushita, supra*, 475 U.S. at 587 (citation and internal quotation marks omitted).

27   [57] *Chapman v. Pier 1 Imports (U.S.), Inc.,* 631 F.3d 939, 945 (9th Cir.2011).

28

2008 in violation of the accessibility standards designed to protect Plaintiff from the very discrimination and injury she suffered.

## IV.   THE COURT HAS JURISDICTION OVER THE PARTIES

### A.   Elements Plaintiff must prove to succeed in her ADA claims.

For Plaintiff to succeed in her claims for discrimination under the ADA, she must prove that she, (1) is disabled within the meaning of the ADA (and California law), (2) Defendant, MPJ Desai Inc., is a private entity that own, leases, or operates the Inn as a place of public accommodation, and (3) she was denied access to the public accommodations at the Inn by Defendant because of her disability.[58] The third element to prove discrimination—that Plaintiff was denied access—is satisfied when a Plaintiff can prove there are violations of applicable accessibility standards at the Inn during her visit.[59]

In addition, since 1992 the Unruh Act has held, "[a] violation of the right of any individual under the [ADA] ... constitute[s] a violation of this section." [Cal. Civ. Code §§ 51(f)]  Under state law, a violation of California Building standards also constitutes a violation of the Unruh Act without the showing of intent.[60]

### B.   Plaintiff is a Qualified Person with a Disability.

Plaintiff is a qualified person with a physical disability under both the ADA and California civil rights codes.[61]  The ADA defines "disability" with respect to an individual as a "physical or mental impairment that substantially

---

[58] *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.,* 603 F.3d 666, 670 (9th Cir. 2010)

[59] *Chapman v. Pier 1 Imports (U.S.),  Inc.,* 631 F.3d 939, 945 (9th Cir.2011).

[60] *See, e.g., Arnold v. United Artists Theater Circuit, Inc.,* 866 F.Supp. 433, 439 (N.D.Cal.1994).  *Donald v. Cafe Royale,* 218 Cal.App. 3d 168, 177-78 (Ct. App. 1990).

[61] SSUF 7, 28 C.F.R.§36.104

limits one or more major life activities of such individual.[62]  Plaintiff suffers from progressive diabetes and neurological and physical injuries resulting from car accidents and strokes.  Plaintiff is significantly limited in her ability to eat, walk, stand, care for herself, and has limited strength and mobility in her hands and legs[63]

Diabetes is a recognized "physical impairment under the ADA" because it is a condition affecting the digestive, hemic, and endocrine systems of a person's body.[64]  Diabetes, even if controlled, may affect "major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[65]

Plaintiff suffered physical injuries and a stroke that caused significant neurological impairments that affect her ability to independently walk or stand. She also suffers from limited strength and mobility in her hands and cannot grasp or pinch with her fingers. She cannot pinch or twist levers, hardware or operating locks, such as the push pin in the tub bench she used, or the twisting lock in the new tub benches offered by Defendant.[66]

Defendant has aggressively fought Plaintiff's claims to being disabled, and has alleged fraud, a meritless case, and that Plaintiff runs a "business" suing people.  The undisputed facts of the violations show the validity of Plaintiff's claims.  Plaintiff is a full-time wheelchair user, and sometimes is able to use special canes, or a walker to take a few steps or to stand.[67]

---

[62] 42 U.S.C. § 12102(2)(4)(A)(B) & (C), See, *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566-67 (1999), the determination of a disability is based on "the effect of that impairment on the life of the individual."
[63] SSUF 2
[64] *Fraser v. Goodale,* 342 F.3d 1032, 1038 (9th Cir.2003)
[65] Id.
[66] SSUF 72
[67] SSUF 3

1    Plaintiff requires the use of public facilities that comply with accessibility

2    standards to enable to her to safely and independently bathe, use the toilet, use

3    public paths of travel and that she use from her sitting position in her wheelchair.

4    Plaintiff cannot walk independently, or bathe standing in a tub or shower.[68]

5    Plaintiff's understanding of her disability, is that she is an "incomplete

6    quadriplegic," meaning that all of her limbs are affected and limited in

7    mobility.[69]  A plaintiff's testimony regarding her disability and the limitations on

8    her life activities is admissible testimony regarding her status as a "qualified

9    person" with a disability.[70] Plaintiff is a qualified individual with a disability

10   under both the ADA and California law because she is significantly limited in

11   major life activities, including walking standing, eating, strength and stamina due

12   to her physical condition.[71]

13        **C.    Defendant MPJ Desai, Inc., constructed, owns and operates the**

14             **Inn.**

15        Title III of the ADA, prohibits discrimination against persons with

16   disabilities by any person who "owns, leases (or leases to), or operates a place of

17   public accommodation."[72]   Cal. Civ. Code §§ 51 (f) makes a violation of any

18   provision of the ADA, a separate violation of the Unruh Act.  Further, California

19   Appellate court has interpreted civil rights codes [Cal. Civ. Code § 51 et seq. and

20   Cal. Health & Saf. Code §§ 19955 et seq.] to apply to owners and tenants of

21   places of public accommodation.[73]   Defendant MPJ Desai constructed the Inn,

22   owns the facilities, and operates the business.[74]  As the owners and operators of

23

24   ─────────────────────
     [68] SSUF 3
     [69] SSUF 2
25   [70] *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005)
     [71] *Fraser,* supra at 1041.
26   [72] 42 U.S.C. § 12182; see also 28 C.F.R. § 36.104.
     [73] *Donald v. Sacramento Valley Bank*, 209 Cal.App.3d 1183, 1191 (1989).
27   [74] SSUF 75

28
     ────────────────────────────────────────────────
     MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
     PARTIAL SUMMARY JUDGMENT
     Case No.: EDCV 14-00277-JGB (SPx)                                    15

1    the Inn, Defendant is liable under the ADA and California civil rights laws for

2    the discrimination resulting from Plaintiff's visit.[75]

3         The Inn is covered by the ADA and the Unruh Act as a place of public

4    accommodation.  A place of public accommodation includes "an inn, motel or

5    other place of lodging," and includes "a restaurant, bar, or other establishment

6    serving food or drink."[76]  The Unruh Act [Cal. Civ. Code §51] prohibits

7    discrimination, "in all business establishments of every kind whatsoever."  The

8    Inn is a public accommodation covered by Title II of the ADA and California

9    civil rights laws and regulations, and Defendant cannot discriminate against

10   persons with disabilities in the operation of the Inn.

11

12   **V.    DEFENDANT DENIED PLAINTIFF FULL AND EQUAL ACCESS**

13           **TO THEIR PUBLIC FACILITIES IN VIOLATION OF CIV. CODE**

14           **§§ 51 AS A MATTER OF LAW**

15      **A. Regulatory System for Public Accommodations in California Law.**

16        On July 1, 1981, California enacted Title 24-2 building codes for

17   accessibility standards in public accommodations requiring that *new construction*

18   comply with minimum building code standards, unless the owner obtained an

19   "unreasonable hardship" exception from the local governing agency and

20   provided equivalent facilitation before construction.[77]  In *Donald v. Café Royale*

21   *Inc.*, the California Court of Appeal explained the legislative scheme to ensure

22   that public accommodations in California were built or remodeled to be

23   accessible to disabled persons, so that the owners and tenants have an affirmative

24

25   [75] *Botosan v. McNally Realty*, 216 F.3d 827, 833-834 (9th Cir. 2000).

26   [76] 42 U.S.C. § 12181(7)(A) & (B)

27   [77] *Donald v. Café Royale Inc.*, 218 Cal.App.3d 168, 183 (1990); Building officials may authorize deviations from building codes, if it provides "equivalent facilities" under a "hardship exception. Health & Saf. Code §19957, and C.C.R., Tit. 24-2; *11B-202.4*

28

1  duty to remove physical barriers.[78]  The express purpose of Cal. Health & Saf.

2  Code § 19955 and Cal. Gov. Code § 4450 was to "make all public and private

3  buildings accessible to physically handicapped persons" following new

4  construction or alterations.[79]  Violations of California's accessibility standards

5  are *per se* violations of Cal. Civ. Code § 51, without regard to the good

6  intentions of the violators.  In *Donald v. Cafe Royale*, supra, the California Court

7  of Appeal explained that:

8              any person who shall do the act [violation of accessibility

9              standards] shall do it at his peril, and that he shall not be

10             allowed to escape punishment by showing that he acted in

11             good faith, without negligence, and in ignorance of the

12             existence of the circumstances rendering the act unlawful.[80]

13     Defendant constructed the Inn in **2008**, but failed to do so in compliance

14  with the existing accessibility standards required under California codes at the

15  time of the construction.[81]

16  **B. Regulatory analysis under Title III of the ADA.**

17     Title III of the ADA, covering private businesses, states that: "[n]o

18  individual shall be discriminated against on the basis of disability in the full and

19  equal enjoyment of the goods, services, facilities, privileges, advantages, or

20  accommodations of any place of public accommodation by any person who

21  owns, leases (or leases to), or operates a place of public accommodation."[82]  Title

22  III defines discrimination as a failure to construction a public accommodation

23  that is "readily accessible to and usable by" for persons with disabilities.[83]  "In

24

25  [78] *Donald v. Café Royale Inc., supra* at 178-180.

    [79] *Id.* at 179.

    [80] *Id.* at 180.

26  [81] SSUF 77 (

    [82] 42 U.S.C. § 12182.

27  [83] 42 U.S.C. § 12183(a)(1).

28

1    the case of newly constructed facilities, compliance with the ADA's

2    antidiscrimination mandate **requires that facilities be 'readily accessible** to and

3    usable by individuals with disabilities.'" [84]

4           The definition of whether a public accommodation is "readily accessible"

5    is determined in part, by its compliance with the ADA Accessibility Guidelines

6    ("ADAAG").[85]  The Department of Justice, who is the enforcing agency has

7    stated that it considers "any element in a facility that does not meet or exceed the

8    requirements set forth in the [ADAAG] to be a barrier to access"[86]  The Ninth

9    Circuit has approved this interpretation of "barriers" in *Chapman v. Pier 1*

10   *Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011).

11          The Inn was constructed for first occupancy in 2008, and was built in

12   violation of ADAAG standards, and was not "readily accessible" because of the

13   multiple violations of accessibility standards that Plaintiff encountered when she

14   visited at the Inn, in September 2013. Any claims from Defendant that they

15   complied as best they could, or met the spirit of the regulations is not a justifiable

16   excuse for access violations.  The Ninth Circuit has made it clear that full

17   compliance with ADAAG, for new construction, is the requirement, stating;

18   "[w]e have held that 'obedience to the spirit of the ADA' does not excuse

19   noncompliance with the ADAAG's requirements."[87]

20          Once Plaintiff demonstrates that she encountered barriers at the Inn that

21   were violations of ADAAG standards at the time of construction, Plaintiff has

22   met the third element necessary to prove that Defendant discriminated against

23

---

24   [84] Id.; *Miller v. Cal. Speedway Corp.,* 536 F.3d 1020, 1024–25 (9th Cir.2008), emphasis
     added.

25   [85] *See* 28 C.F.R. § 36.406(a), standards for new construction; *Miller v. Cal. Speedway Corp.,*

26   536 F.3d 1020, 1024–25 (9th Cir.2008) (describing the ADA's regulatory framework), *cert.
     denied,* 555 U.S. 1208, 129 S.Ct. 1349, 173 L.Ed.2d 648 (2009).

27   [86] *See Pascuiti v. N.Y. Yankees,* 87 F.Supp.2d 221, 225 (S.D.N.Y.1999)
     [87] *See Long v. Coast Resorts, Inc.,* 267 F.3d 918, 923 (9th Cir.2001).

28

1   her in violation of the ADA and the Unruh Act. "Where the statutory language is
2   clear and consistent with the statutory scheme at issue, the plain language of the
3   statute is conclusive and the judicial inquiry is at an end."[88]  Proven violations of
4   accessibility standards conclusively indicate that there is no genuine issue of
5   material fact concerning Defendant's liability and discrimination against
6   Plaintiff.

7

8   **VI.    DEFENDANT CONSTRUCTED THE INN IN 2008 IN VIOLATION**
9   **        OF ADA AND CALIFORNIA ACCESSIBILITY STANDARDS**
10  **    A. Violation of ADAAG and Title 24-2 Building Standards.**

11          Plaintiff's experts identified building standard violations during three
12  inspections of the Inn.[89]  Plaintiff encountered barriers in the parking lot, the
13  exterior path of travel, the lobby check-in counter, the lobby market, the lobby
14  restroom, the guest breakfast facilities, and significant access barriers in the two
15  designated accessible guestrooms she stayed in during her visit (guestrooms 127
16  and 312).  Specifically, she encountered access barriers in the two accessible
17  guest bathrooms, including in the bathroom in room 312, where Plaintiff fell and
18  severely injured herself due to the barriers and the lack of an accessible tub
19  bench.

20          Plaintiff's experts identified the access barriers encountered by Plaintiff at
21  the Inn, and also inspected the other four (4) designated accessible guestrooms
22  offered at the Inn.  They found that all of the designated accessible guestrooms
23  were constructed in violation of ADAAG and Title 24-2 codes and standard.  A
24  review of the approved plans for the Inn at the City of Norco, shows that the

25

26

27  [88] *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732 (9th Cir. 2007)
    [89] SSUF 78

28

barriers resulted in an intentional decision by Defendant **not** to comply with accessibility standards.[90]

The following chart lists the access barriers alleged by Plaintiff, a list of the violation of specific ADA and California accessibility standards, and the declaration of Plaintiff's experts to explain the building code violations.

**B. Table of barriers and code violations.**

## TABLE OF BARRIERS AND CODE VIOLATION

| Identification of Barriers | Code Violation [1991 ADAAG] and (2004 Title 24) provided which are applicable for original construction, later standards as applicable are noted specifically | Evidence of Violations | Plaintiff's description of barriers noted in Complaint and in her Declaration. |
|---|---|---|---|
| **Parking:** insufficient accessible parking spaces, 3 spaces provided, and 4 required; spaces located with excessive slopes, greater than 2%; incorrect configuration and missing signage. | Number of accessible spaces, [4.1.2 (5) (a)], (1129B.1 & Table 11B-6); Slopes, [ 4.1.2 (4)], (1129B.4.4); Signage, [4.6.4], (1129B.5) | Dean Dec.¶ Mastin Dec.¶11 | Rudder Dec.¶¶ 8-9 Complaint ¶ 15 |
| **Path of travel:** excessive slopes from the path of travel from the parking to the entrance | [ 4.3.7],  (1133B.7.3) | Dean Dec. Mastin Dec. | Rudder Dec.¶ 9 Complaint ¶ 15 |
| **Registration counter:** No lowered portion of the counter to register wheelchair guests, after December 2013, a non-compliant lowered was placed for registration of wheelchair guests | [ 4.32.4]; (1133B.7.3) | Rudder Dec. Dean Dec. Mastin Dec. | Rudder Dec.¶ 10  Complaint ¶16 |

---

[90] SSUF 79

| Identification of Barriers | Code Violation [1991 ADAAG] and (2004 Title 24) provided which are applicable for original construction, later standards as applicable are noted specifically | Evidence of Violations | Plaintiff's description of barriers noted in Complaint and in her Declaration. |
|---|---|---|---|
| **Market:** items in the market out of reach, and transaction window too high | [4.32.4]; (1133B.7.3) | Rudder Dec. Dean Dec. Mastin Dec. | Rudder Dec.¶10 Complaint ¶ 17 |
| **Business Center:** the door had excessive door pressure and requires more than 5lbs to operate. | [4.13.11], (1133B.2.5) | Dean Dec. | Rudder Dec. Complaint ¶ 33 |
| **Breakfast/dining room:** no accessible tables, food items out of reach range, no signage for assistance until after December 2013. | Reach, [4.2.6], [2010 ADAAG 308.3], (1118B.6), (2013 Title 24 11B-308.3) | Rudder Dec. Dean Dec. | Rudder Dec.¶¶ 11, 20 Complaint ¶19; 27 |
| **Guestroom 127:** Automatic door closer removed. Toilet: insufficient maneuvering space in front of toilet, obstruction over side grab bar.  Bathtub: tub bench not secure, too narrow for removable tub bench, grab bars incorrectly mounted, shower head too high, the controls are located too far from the tub opening. Lavatory no insulation on hot water supply piping. | Front toilet clearance (1115B.7.2); Obstructed toilet grab bar, [4.17.6 & Fig. 30 (a), (b), (c), & (d)], (1115B.8.1 & Fig. 11B-1A, B & C); Secure tub seat, [4.20.3& Fig. 33 & 34], [2010 ADAAG 610.2], (1115B.6.1.2 & fig. 11B-8 & 11B-9B), (2013 Title 24 11B-610.2); Tub grab bars, [4.20.4 & fig. 33 & 34], (1115B.6.1.3 & Fig. 11B-8 & 11B-9B); Shower head height, [4.20.6 & 4.2.5], (1115B.6.1.5 & 1118B.5); Controls for tubs, [4.20.5 & Fig. 34], (1115B.6.1.4 & Fig. 11B-9B); Insulation of lavatory pipes, [419.4], (1115B.2.1.2.2). | Dean Dec. Mastin Dec. | Rudder Dec.¶ 10 Complaint ¶18 |
| **Guestroom 312:** Automatic door closer removed. Toilet: insufficient maneuvering | Front toilet clearance (1115B.7.2); | Rudder Dec. Dean Dec. Mastin Dec. | Rudder Dec.¶ 13 Complaint ¶¶ 20-22 |

| Identification of Barriers | Code Violation [1991 ADAAG] and (2004 Title 24) provided which are applicable for original construction, later standards as applicable are noted specifically | Evidence of Violations | Plaintiff's description of barriers noted in Complaint and in her Declaration. |
|---|---|---|---|
| space in front of toilet, grab bars too short and incorrectly mounted. Bathtub: no portable shower head, no tub bench, one grab bar incorrectly mounted, missing tub grab bars, the water controls are located too far from the tub opening. Lavatory: Apron blocks knee and toe  space – preventing it from having the proper clearance for a wheelchair user,, no insulation on hot water supply piping, | Toilet grab bars, [416.4 & Fig. 29], (1115B.8.1 & Fig. 11B-1A, B & C); Handheld shower head [4.20.6],  (1115B.6.1.5); missing tub seat, [4.20.3& Fig. 33 & 34], [2010 ADAAG 610.2], (1115B.6.1.2 & fig. 11B-8 & 11B-9B), (2013 Title 24 11B-610.2); Tub grab bars, [4.20.4 & fig. 33 & 34], (1115B.6.1.3 & Fig. 11B-8 & 11B-9B); Controls for tubs, [4.20.5 & Fig. 34], (1115B.6.1.4 & Fig. 11B-9B); Sink knee space, [419.2], (1115B.2.1.2.1); Insulation of lavatory pipes, [419.4], (1115B.2.1.2.2) | | |
| **Tub Bench:** tub bench required pinching and twisting, tub too narrow for the bench to fit stable.  The seat was the incorrect height.  The bench legs could not lay flat.  Pin securing legs fell out and allowed the legs to fold up and the seat to collapse. Rubber clamps securing the bench to the tub were deformed and came off. | No pinching or twisting of operating parts, [4.27.4], [2010 ADAAG 309.4], (1117B.6.4), (2013 Title 24: 11B-309.4); Bench seat height and width, seat must be secure, [4.20.3], [2010 ADAAG 610.2[, (1115B.6.1.2), (2013 Title 24 11B-610.2) | Rudder Dec. Dean Dec. Mastin Dec. | Rudder Dec.¶¶ 15-17 Complaint ¶¶22-24; |

1

## C. Defendant intentionally violated the approved plans filed with the

2

## City of Norco, and applicable accessibility standards.

3      Plaintiff is not required to show intentional violations to prove

4  discrimination under state of ADA statutes. [91]  However, Plaintiff has

5  discovered that Defendant submitted plans to construct the Inn, in compliance

6  with accessibility standards, and then intentionally ignored the approved plans.

7  Plaintiff can demonstrate that violations of the ADA and California

8  accessibility standards, were the result of an intentional decision by Defendant

9  to ignore access requirements at the Inn, and that as a direct result Plaintiff was

10  injured.

11      Plaintiff tried for months to obtain copies of the approved building plans

12  from Defendant in discovery.  Plaintiff was forced to file a discovery motion to

13  compel to obtain approved plans.[92]  While waiting for the Court to rule on the

14  discovery motion, Plaintiff's expert Jeff Mastin, an architect and expert on

15  accessibility standards, went to the City of Norco to review the approved

16  building plans to determine why a hotel constructed 15 years after the effective

17  date of the ADA, was built so clearly out of compliance with accessibility

18  standards.[93]  The City had the approved plans and Mr. Mastin reviewed them,

19  but could not make copies of the plans as this is not permitted.[94]  Mr. Mastin

20  discovered that the majority of the access barriers he identified at the Inn, were

21  violations not only of accessibility standards, but were violations of the plans

22  "approved" by the City of Norco for the construction of the Inn.[95]

23

24

25  [91] *Munson v. Del Taco, Inc.,* 46 Cal. 4th 661, 665 (2009); *Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 180, 266 Cal. Rptr. 804, 811 (Ct. App. 1990)

26  [92] Barbosa dec., ¶ 2
    [93] SSUF 79

27  [94] See, Cal. Health & Saf. Code § 19851 (a)
    [95] SSUF 80

28

1   Mr. Mastin found that the approved plans in the City showed compliant

2   plans for the parking lot, the paths of travel, the lobby registration counter, the

3   women's public restroom, and the door maneuvering spaces.  Most disturbing

4   was the compliant, approved plans for the accessible guestroom.  The approved

5   plans, showed accessible door entrances, the lavatories with knee space, the

6   toilet with proper mounting, grab bar locations and sufficient clear space, and

7   the tub/showers were **correctly drawn and approved.**   The guestrooms that

8   Plaintiff used, rooms 217 and 312, had violations that directly impacted her

9   ability to use the facilities and could have prevented her injuries. [96]

10   The failure to comply with accessibility codes is not a mistake, or a

11   failure on the part of the architect to design or the City to approve compliant

12   plans.  The violation of accessibility standards are the result of a willful refusal

13   to comply with the approved plans issued by the City of Norco.  Intentional

14   failure to comply with accessibility standards are intentional discrimination.

15   Plaintiff not only had difficult using the Inn's facilities, the decision not to

16   comply with accessibility standards for restrooms directly resulted in her fall

17   and injuries.

18

19   **VII.   CONCLUSION**

20   There are no genuine issues of material fact which Defendant can raise to

21   excuse the multiple and significant, and intentional violations of required

22   accessibility standards.  Plaintiff has demonstrated with admissible, credible

23   evidence that; 1) Plaintiff is a qualified person with a disability, 2) that

24   Defendant is the owner, and operator of a place of public accommodation, and 3)

25   that Plaintiff was denied full and equal opportunity to enjoy the goods and

26   service offered at the Inn because she was disabled and could not use the

27   ───────────────
[96] SSUF 81

28

1 facilities constructed and maintained in violation of applicable accessibility
2 standards.  Having proven the violations of ADAAG and California Building
3 Code, liable for disability discrimination against Plaintiff under the ADA and
4 Unruh Act, require a finding of liability, as a matter of law.
5    Plaintiff respectfully requests that this Court grant her Motion for Partial
6 Summary Judgment as to liability and find that Defendant, as owner and operator
7 of the Hampton Inn-Norco discriminated against Plaintiff CHRISTIE RUDDER
8 on September 27-29, 2013 on the basis of her disability in violation of Title III of
9 the ADA and Cal. Civil Code §51et seq.
10 Respectfully submitted,
11
12
13 Dated: March 16, 2015          **BARBOSA GROUP**
14
15                    By:   /s/PATRICIA BARBOSA
16                          PATRICIA BARBOSA
17                          DANIELLA LITVAK
                             Attorneys for Plaintiff,
18                          CHRISTIE RUDDER
19
20
21
22
23
24
25
26
27
28